## BREYMANN v. UNITED STATES.
### No. 45680.

Court of Claims.
May 6, 1946.

Wm. S. Hammers, of Washington, D. C., for plaintiff.

Gaines V. Palmes, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, JONES, WHITAKER, and MADDEN, Judges.

LITTLETON, Judge.

On June 22, 1938, defendant issued an invitation for competitive unit-price bids for certain dredging work to be done in Cape Cod Canal, Mass., in accordance with certain drawings and specifications. Plaintiff's bid of 36.3 cents per cubic yard scow measurement was accepted and the standard form of contract at this price was executed by the parties July 19, 1938. The dredging was to be done in two areas which were designated Section A and Section B. As set forth in findings 6 and 7, paragraph 1-04 of the specification estimated "as a basis for canvassing bids and for determining the amount of the consideration of the contract" that the total estimated quantities of material necessary to be dredged, including allowable overdepth, was 898,900 cubic yards scow measurement. It was also stated that the contractor would be required to excavate at the contract price the quantity of material necessary to complete the work specified, whether more or less than the amount thereinabove estimated. The specification further stated in paragraph 1-08 under "Physical data" that "During the progress of recent contracts the prescribed cuts have been secured by the contractor after the dredging of about 75% of the estimated quantity of material in the cut, scow measurement, including overdepth. The quantity of materials given in the specifications, are the estimated pay yardages and are 75% of the estimated quantities, scow measurement, that must be removed from the cuts."

Paragraph 4-01 gave bidders certain information based on past experience in dredging in Areas A and B, but stated that "The United States does not guarantee that other materials will not be encountered nor that the proportions and locations of the several materials will not vary from those indicated. Bidders are expected to examine the site of the work and, after investigation, decide for themselves the character of the materials and make their bids accordingly." Article 4 of the contract was the standard provision relating to the matter of encountering "subsurface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications."

Plaintiff based her unit-price bid of 36.3 cents per cubic yard on an estimated actual cost of 31.78 cents per cubic yard for dredging 898,900 cubic yards in the two sections and 4.52 cents for overhead and profit. As set forth in findings 9, 13, and 14 an unexpected hurricane of two hours' duration occurred along the New England Coast during which the velocity of the wind was so great as to cause a current velocity of the water in the Canal of 10 to 12 miles an hour. This unusual current, as compared with the maximum velocity of normal tide currents of about 4 miles an hour, removed, or scoured out, a total of 187,169 cubic yards of material from Section B which, except for the hurricane, plaintiff would have dredged and for which she would have been paid the contract unit price of 36.3 cents per cubic yard. At the time of the hurricane dredging operations in Section A were practically completed and the hurricane currents had no substantial effect on the material in that section. As a result of the hurricane plaintiff suffered a loss of $33,149.57 made up of increased costs of $24,689.57 of removing only 382,784 cubic yards from Section B and loss of profit of $8,460.

Plaintiff contends that she should be given judgment for this on the grounds that—

"1. The insertion in the specifications of the quantities of pay yardage material within the limits of the areas to be dredged, with the statement that said amounts would be used as a basis for canvassing bids and for determining the amount of the consid-

eration of the contract, imported a warranty that the quantities stated were accurate, except for slight and unimportant variations, and plaintiff is entitled to recover the amount of the damages sustained as a result of the quantities being substantially less than as represented.

"2. The failure and refusal of the Government to modify the contract, pursuant to the covenant in Article 4 thereof, to provide for the increase of cost resulting from the changed conditions encountered during the progress of the work, was a breach of the contract subjecting the United States to suit for recovery of the amount of damages sustained by plaintiff in performing the contract."

The questions presented in this case are the same as the issues involved and decided in the case of Arundel Corporation v. United States, 103 Ct.Cl. 688. That case involved dredging operations in the Cape Cod Canal under a contract and specifications which were the same, in all material respects, as the contract and specifications of plaintiff. The loss there involved was caused by the same hurricane on September 21, 1938, which removed 425,-950 cubic yards of material which, except for the hurricane, the contractor would have dredged at the contract unit price. We held, pp. 20-24, that the effect of the hurricane was not a changed subsurface or latent condition within the meaning of article 4 and, also, that the language of the specifications did not amount to a warranty by the Government that the estimated quantities of material in the areas to be dredged were accurate for pay purposes. Under the opinion of the court in the Arundel case, plaintiff is not entitled to recover, and the petition is dismissed. It is so ordered.

JONES and WHITAKER, Judges, and WHALEY, Chief Justice, concur.

MADDEN, Judge, took no part in the decision of this case.